1  Kamran Fattahi (Cal. Bar 150,343)
   LAW OFFICES OF KAMRAN FATTAHI
2  15303 Ventura Boulevard, Suite 1400
   Sherman Oaks, California 91403
3  Tel: (818) 205-0140
   Fax: (818) 205-0145
4  E-mail: Kamran@FattahiLaw.com

5  Attorneys for Plaintiff
   American Impex Corp.

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  AMERICAN IMPEX CORP., d/b/a ACE FABRICS & TRIMS, | Civil Case No. CV09-7082 PA (Ex) |
| 12                    Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| 13            v. | |
| 14  INTERNATIONAL ACE TEX, INC.; PAYMAN MALEKAN; ETHAN MALEKAN; SEON MALEKAN; and DOES 1 through 10, inclusive, | Date: November 9, 2009<br>Time: 1:30 p.m.<br>Place: Courtroom 15<br>(Hon. Percy Anderson)<br>312 N. Spring St.<br>Los Angeles, CA 90012 |
| 16                    Defendants. | |

18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

## TABLE OF CONTENTS

Page

I.   INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Plaintiff and Its "ACE" Trademark and Trade Name. . . . . . . . . . . . . 2

    B.  Prior Litigation and Settlement Agreement Between the Parties . . . . 3

    C.  Defendants' Breaches of the Settlement Agreement . . . . . . . . . . . . . 5

III. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION . . . . . . 6

    A.  Standard for Issuance of Preliminary Injunction . . . . . . . . . . . . . . . . 6

    B.  Plaintiff Is Likely to Succeed On the Merits . . . . . . . . . . . . . . . . . . 6

    C.  There Is A Likelihood of Irreparable Harm to Plaintiff . . . . . . . . . . . 8

    D.  Plaintiff Has Raised Serious Questions on the Merits and the Balance of Hardships and Equities Is in Plaintiff's Favor. . . . . . . . . . . . . . . . . . . . . . . . . . 10

    E.  A Preliminary Injunction Is In the Public Interest . . . . . . . . . . . . . 11

IV.  IF A BOND IS REQUIRED, THE AMOUNT SHOULD BE MINIMAL . 11

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

LAW OFFICES OF KAMRAN FATTAHI
Sherman Oaks Galleria
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
Tel (818) 205-0140 ; Fax (818) 205-0145

-i-

P's Memo of P&A Re Motion for Prelim. Inj.
American Impex v. International Ace Tex

## TABLE OF AUTHORITIES

Cases                                                                     Page

Anti-Monopoly, Inc. v. General Mills Fun Group
611 F.2d 296, 300-02 (9th Cir. 1979), cert. denied, 459 U.S. 1227 (1983) ...... 11

Duncan McIntosh Co. v. Newport Dunes Marina LLC
324 F.Supp.2d 1078, 1083 (C.D. Cal. 2004) .................................... 10

Finance Express LLC v. Nowcom Corp.
564 F.Supp.2d 1160, 1168 (C.D. Cal. 2008) ............................... 6, 9, 10

Jorgensen v. Cassidy
320 F.3d 906, 919 (9th Cir. 2003) ............................................ 11

Kiddie Rides, Inc. v. Southland Engineering, Inc.
361 F.2d 575 (9th Cir. 1966) ................................................. 11

Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.
571 F.3d 873, 877 (9th Cir. 2009) ............................................. 9

Prudential Real Estate Affiliates, Inc. v. PRR Realty, Inc.
204 F.3d 867, 874 (9th Cir. 2000) ............................................. 6

Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.
944 F.2d 597, 603 (9th Cir. 1991) ............................................. 9

Sierra On-Line, Inc. v. Phoenix Software, Inc.
739 F.2d 1415, 1421 (9th Cir. 1984) .......................................... 10

SMC Promotions, Inc. v. SMC Promotions
355 F.Supp.2d 1127, 1137 (C.D. Cal. 2005) .................................. 9, 11

State of Alaska v. Native Village of Venetie
856 F.2d 1384, 1388 (9th Cir. 1988) ........................................... 6

Ticketmaster LLC v. RMG Technologies, Inc.
507 F.Supp.2d 1096, 1116 (C.D. Cal. 2007) ................................... 11

Vision Sports, Inc. v. Melville Corp.
888 F.2d 609, 612 n.3 (9th Cir. 1989) ......................................... 9

Winter v. NRDC, Inc.
129 S.Ct. 365, 374 (2008) ..................................................... 6

Statutes & Rules

FRCP 65(c) ................................................................... 11

-ii-

P's Memo of P&A Re Motion for Prelim. Inj.
American Impex v. International Ace Tex

LAW OFFICES OF KAMRAN FATTAHI
Sherman Oaks Galleria
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
Tel (818) 205-0140 ; Fax (818) 205-0145

## I. INTRODUCTION AND BACKGROUND

This action is brought by Plaintiff American Impex Corp., d/b/a Ace Fabrics & Trims, ("AIC") against International Ace Tex, Inc. ("IATI"), a California corporation, and individuals Payman Malekan, Ethan Malekan, and Seon Malekan (the "Malekan defendants"), who are the owners and/or managing operators of IATI. Defendant IATI recently registered its current corporate name with the State of California when it changed name from Ace Textile, Inc. ("Ace Textile"). IATI and the Malekan defendants are hereinafter sometimes together collectively referred to as **"Defendants,"** unless otherwise noted or is made reasonably clear from the context.

In March 2008, AIC filed a civil action against Ace Textile, which primarily involved AIC's claims of trademark infringement and related unfair competition resulting from Ace Textile's usage of the designation ACE as part of the ACE TEXTILE trademark and trade name in marketing and selling textiles and fabrics in violation of AIC's federally registered trademark and trade identity rights in the ACE and ACE FABRICS & TRIMS trademarks. In February 2009, a Settlement Agreement with an Effective Date of February 17, 2009 was entered into, and that action was dismissed as a result of the Settlement Agreement. Among other things, the Settlement Agreement provided that within four months of the Effective Date (or at the most within six months but only in case of an "honest mistake" by Ace Textile), Ace Textile would stop using the designations ACE or ACE TEXTILE in any and all manners of use whatsoever, and would also change its corporate and business name from "Ace Textile, Inc." to "International Acetex, Inc."

Instead of complying with its settlement obligations, Ace Textile changed its corporate name to "International Ace Tex, Inc." wherein contrary to the explicit language of the Settlement Agreement, "Ace" and "Tex" appear as two separate terms. Moreover, even after August 17, 2009 (six months after the Effective Date), IATI (formerly Ace Textile) has continued to use the designation "Ace Textile" in

P's Memo of P&A Re Motion for Prelim. Inj.
American Impex v. International Ace Tex

1  its business in various prominent platforms such as on its store signage, invoices,
2  telephone listings, and in answering its telephone.
3    Plaintiff recently discovered Defendants' breaches of the Settlement
4  Agreement and continued acts of trademark infringements and unfair competition.
5  Plaintiff faces immediate and irreparable harm – as also expressly acknowledged
6  and agreed to by Defendants in the Settlement Agreement – unless IATI, as well as
7  the Malekan defendants who own and/or control the activities of IATI and who are
8  also explicitly bound by the terms of the Settlement Agreement, are enjoined from
9  continuing their infringing conduct and blatantly breaching the Settlement
10 Agreement.

## II.    STATEMENT OF FACTS

### A.    Plaintiff and Its "ACE" Trademark and Trade Name

Plaintiff AIC is engaged in marketing, distributing, and selling textiles and related accessories throughout the greater Los Angeles area, in the State of California, and elsewhere in the United States. [See Decl. of Matt Pouratian, ¶4] For purposes of identifying itself as an exclusive source and distinguishing itself from other businesses engaged in the sales of textiles, since 1994, AIC has used the distinctive trade names and service marks of **ACE** and **ACE FABRICS & TRIMS** in connection with its sales of textiles and related accessories. [Pouratian Decl. ¶5] AIC has registered its ACE and ACE FABRICS & TRIMS trademarks with the U.S. Patent and Trademark Office ("PTO") in connection with "wholesale stores featuring textiles and fabrics" in International Class 35. Specifically, AIC is the owner of U.S. Registration No. 3,472,010 for the mark ACE, and U.S. Registration No. 3,472,011 for the mark ACE FABRICS & TRIMS. [Pouratian Decl. ¶6; Ex. 1]

---

[1]    "Pouratian Decl." refers to the Declaration of Matt Pouratian that was previously filed in this action on October 7, 2009 in support of Plaintiff's Ex Parte Application for TRO and OSC Re Preliminary Injunction. The instant Motion for Preliminary Injunction relies on and incorporates that Declaration by reference.

LAW OFFICES OF KAMRAN FATTAHI
Sherman Oaks Galleria
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
Tel (818) 205-0140 ; Fax (818) 205-0145

AIC's federal trademark registrations for its "ACE" and "ACE FABRICS & TRIMS" are evidence of AIC's ownership of and exclusive right to use those marks in the United States on or in connection with the listed services. 15 U.S.C. §1057(b).

**B.     Prior Litigation and Settlement Agreement Between the Parties**

Plaintiff AIC and Ace Textile were previously parties to an action before this Court, captioned as "American Impex Corp., d/b/a Ace Fabrics & Trims v. Ace Textile, Inc.; Case No. CV-08-01948 PA (Ex)" (hereinafter "the Original Action"). [Pouratian Decl. ¶7] The Original Action primarily involved AIC's claims of trademark infringement and related unfair competition claims against Ace Textile resulting from the latter's usage of the ACE trademark and trade name in marketing and selling textiles and fabrics in violation of AIC's trademark and trade identity rights. [Pouratian Decl. ¶7] AIC and Ace Textile settled the Original Action by entering into a Settlement Agreement having an Effective Date of February 17, 2009 ("Settlement Agreement"). [Pouratian Decl. ¶8, Ex. 2] As a result of the Settlement Agreement, on February 20, 2009, this Court entered an "Order Dismissing Action With Prejudice," which ended the Original Action between AIC and Ace Textile. This Court retained exclusive jurisdiction over any action or motion relating to the breach or enforcement of the Settlement Agreement. [Pouratian Decl. ¶9, Ex. 3]

Pursuant to ¶ 3 of the Settlement Agreement, Ace Textile agreed that the federal registrations for the marks "ACE" and "ACE FABRICS & TRIMS" are exclusively owned by AIC, and are valid and fully enforceable. [Pouratian Decl. ¶9, Ex. 2]

Pursuant to ¶ 1 of the Settlement Agreement, Ace Textile agreed that by June 17, 2009, it would stop using the terms 'ACE' or 'ACE TEXTILE' in any and all manners of use whatsoever, including but not limited to use of these terms as part of its corporate name, trade name, as part of a trademark or service mark, in marketing, advertising, selling, or distributing of goods or services in the field of

-3-

P's Memo of P&A Re Motion for Prelim. Inj.
American Impex v. International Ace Tex

textiles or fabrics, and in telephone listings, websites or e-mail addresses, store signage, invoicing, packaging and shipping related to the same. [Pouratian Decl. ¶¶9 and 11, Ex. 2]

Under ¶ 2 of the Settlement Agreement, Ace Textile also agreed that by June 17, 2009, it would adopt and use the terms "International Acetex" and/or "International Acetex, Inc." (hereinafter collectively the "New Name") as its corporate name, trade name, trademark or service mark, in marketing, advertising, selling, or distributing of goods or services in the field of textiles or fabrics, and in telephone listings, websites or e-mail addresses, store signage, invoicing, packaging and shipping related to the same. Ace Textile further agreed that in adopting and using the New Name, the term "Acetex" would appear as a single word without any separation between its letters; the word "International" would always appear before the term "Acetex"; all the letters comprising the New Name would appear either as upper case or as lower case letters; all the letters comprising the New Name would be in the same size, color, font, and styling; and the New Name would not appear or be used in a way that would highlight or give attention to the word "Ace" (by way of example, while "ACETEX", or "Acetex", or "acetex" may be used, Ace Textile shall not use "AceTex" or "Ace-Tex" or "Ace-tex" or "Ace/Tex" or "Ace/tex"). [Pouratian Decl. ¶¶9 and 12, Ex. 2]

Paragraph 5.c. of the Settlement Agreement provided a "Notice and Cure" provision but only in the event of an "honest mistake" by Ace Textile in breaching the Settlement Agreement during a period of two (2) months immediately after Ace Textile was required to have met its obligations (i.e., between June 17, 2009 and August 17, 2009). The same paragraph 5.c. explicitly stated that the "Notice and Cure" provision would not apply to any breach of the Agreement by Ace Textile that may occur after August 17, 2009. [Pouratian Decl. ¶¶9 and 13, Ex. 2]

Under ¶ 5.a. of the Settlement Agreement, it was expressly acknowledged by the parties that a breach any of the terms of the Settlement Agreement by the

-4-

P's Memo of P&A Re Motion for Prelim. Inj.
American Impex v. International Ace Tex

breaching party would cause injury to the non-breaching party as U.S. federal law and the laws of the State of California recognize as immediate and irreparable, and that preliminary and permanent injunctive relief would be appropriate. [Pouratian Decl. ¶9, Ex. 2]

Paragraph 5.b. of the Settlement Agreement allowed for liquidated damages in favor of AIC by stating as follows: *"It is hereby expressly acknowledged by the Parties that in the event that Ace Textile breaches any of the terms of this Agreement, in addition to other legal and injunctive relief, as liquidated damages for each instance of breach, AIC shall be entitled to recover and collect the sum of $25,000 (twenty five thousand dollars) solely from Ace Textile, Inc., or from International Acetex, Inc. after the corporate name change has taken place, or from their successors and assigns."* [Pouratian Decl. ¶9, Ex. 2]

Paragraph 5.e. of the Settlement Agreement provided a "prevailing party attorney's fees" provision for payment of costs and reasonable attorney's fees in any action relating to the breach or for enforcement of the Settlement Agreement. [Pouratian Decl. ¶9, Ex. 2]

Paragraph 6.b. of the Settlement Agreement provided a "Successors and Assigns" provision as follows: *"This Agreement shall extend to, inure to the benefit of, and be binding upon the Parties hereto and their respective directors, officers (including without limitation the individuals Ethan Malekan and Seon Malekan who are currently officers of Ace Textile, Inc.), shareholders, partners, proprietors, agents, servants, employees, representatives, affiliates, parents, subsidiaries, predecessors, and permitted successors and assigns."* [Pouratian Decl. ¶9, Ex. 2]

C.  **Defendants' Breaches of the Settlement Agreement**

In or about May 2009, Ace Textile filed certain papers with the Secretary of the State of California and changed its corporate name from "Ace Textile, Inc." to "International Ace Tex, Inc." wherein "Ace" and "Tex" appear as two separate

-5-

P's Memo of P&A Re Motion for Prelim. Inj.
American Impex v. International Ace Tex

terms. [Pouratian Decl. ¶14, Ex. 4]

Furthermore, even since after August 17, 2009, IATI has continued to do business under the name "Ace Textile, Inc." on a daily basis and prominently uses the designation "Ace Textile, Inc." including: on at least one invoice issued to a customer [Pouratian Decl. ¶18, Ex. 5]; on its prominently visible exterior store signage [Pouratian Decl. ¶¶19-20, Exs. 6-9]; in answering its telephone [Pouratian Decl. ¶21, Ex. 10]; and in telephone listings [Pouratian Decl. ¶22, Ex. 11]

### III. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION

Defendants' blatant violations of some of the most important terms of the Settlement Agreement justify the issuance of a preliminary injunction against them.

#### A. Standard for Issuance of Preliminary Injunction

To be entitled to a preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) a balance of hardships or equities in its favor; and (4) an injunction is in the public interest. Winter v. NRDC, Inc., 129 S.Ct. 365, 374 (2008); State of Alaska v. Native Village of Venetie 856 F.2d 1384, 1388 (9th Cir. 1988). The Ninth Circuit has further clarified that the movant may meet this standard by "demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in his favor." Prudential Real Estate Affiliates, Inc. v. PRR Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000); Native Village of Venetie 856 F.2d at 1389. The party moving for preliminary injunction only needs to make the requisite showing with respect to any one of its claims. Finance Express LLC v. Nowcom Corp., 564 F.Supp.2d 1160, 1168 (C.D. Cal. 2008).

#### B. Plaintiff Is Likely to Succeed On the Merits

It is beyond dispute that Defendants have breached some of the most important and material terms of the Settlement Agreement by continuing to use the term "Ace Textile" in its business (including on signage, invoices, in answering

-6-

P's Memo of P&A Re Motion for Prelim. Inj.
American Impex v. International Ace Tex

telephones, and in telephone listings) and also by recording with the Secretary of State of California a change in the name of the corporation from "Ace Textile, Inc." to "International Ace Tex, Inc." and in the manner they use the new corporate name in their business. Therefore, Plaintiff AIC is very likely to succeed on the merits of its claim for breach of the Settlement Agreement in this action.

Specifically, ¶ 1 of the Settlement Agreement required that within four months of the Effective Date (i.e., by June 17, 2009), Ace Textile had to stop using the designations ACE or ACE TEXTILE in its business in any and all manners of use whatsoever, including but not limited to use of these terms as part of its corporate name, trade name, as part of a trademark or service mark, in marketing, advertising, selling, or distributing of goods or services in the field of textiles or fabrics, and in telephone listings, websites or e-mail addresses, store signage, invoicing, packaging and shipping related to the same. [Pouratian Decl. ¶¶ 9 and 11, Ex. 2]

Moreover, ¶ 2 of the Settlement Agreement required that by June 17, 2009, Ace Textile had to change its corporate name from "Ace Textile, Inc." to "International Acetex, Inc." In this regard, it was explicitly agreed that in adopting and using the New Name, the term "Acetex" would appear as a single word without any separation between its letters; the word "International" would always appear before the term "Acetex"; all the letters comprising the New Name would appear either as upper case or as lower case letters; all the letters comprising the New Name would be in the same size, color, font, and styling; and the New Name would not appear or be used in a way that would highlight or give attention to the word "Ace" (by way of example, while "ACETEX", or "Acetex", or "acetex" may be used, Ace Textile shall not use "AceTex" or "Ace-Tex" or "Ace-tex" or "Ace/Tex" or "Ace/tex"). [Pouratian Decl. ¶¶ 9 and 12, Ex. 2]

However, instead of complying with its clear settlement obligations, Ace Textile changed its corporate name with the Secretary of State of California to

"International Ace Tex, Inc." wherein contrary to the explicit language of the Settlement Agreement, "Ace" and "Tex" appear as two separate terms. [Pouratian Decl. ¶14, Ex. 4]

Also, Defendants have violated their settlement obligations in ¶ 1 of the Settlement Agreement when without an "honest mistake," they failed to stop using the terms ACE or ACE TEXTILE in any and all manners whatsoever in their business after June 17, 2009 (i.e., four months after the Effective Date). Even after August 17, 2009 (i.e., six months after the Effective Date, a deadline that did not apply to the "honest mistake" and the two-month "Notice and Cure" provisions), IATI (formerly Ace Textile) has continued to use the designation "Ace Textile" in its business on a daily basis in various prominent manners including: on at least one invoice issued to a customer [Pouratian Decl. ¶18, Ex. 5]; on its prominently visible exterior store signage [Pouratian Decl. ¶¶19-20, Exs. 6-9]; in answering its telephone [Pouratian Decl. ¶21, Ex. 10]; and in telephone listings [Pouratian Decl. ¶22, Ex. 11].

Defendants have apparently realized that they have been caught red-handed, because it was a few days after this lawsuit was filed when they attempted makeshift, crude, temporary changes to some of the exterior store signage of their business, namely, adding the word "International" by hand-writing on some of the signage, and partially painting over the letters "tile" in the word "Textile." [See Pouratian Decl. ¶20 and compare Exhibits 6-8 photographs that were taken before as well as on the day of the filing of this action on September 29, 2009 with Exhibit 9 photographs that were taken on October 4, 2009] However, as shown in the Exhibit 9 photographs, the term "ACE TEX" still appears as two separate words, and there still remains signage on the glass doors/windows of this business that say "ACE TEXTILE, INC.", which are all in violation of the Settlement Agreement.

**C.     There Is A Likelihood of Irreparable Harm to Plaintiff**

Defendants' breaches of the Settlement Agreement go to the heart of their

settlement obligations that required them to stop using the terms ACE and ACE TEXTILE in their business. The continued usage of the terms ACE, ACE TEX, and/or ACE TEXTILE by Defendants has caused actual confusion by customers, members of the trade, mail and delivery businesses, and the public in confusing "Ace Textile" with AIC or in thinking that there is some type of affiliation between Ace Textile and AIC. Such confusion has caused and will continue to cause great and irreparable damage to AIC's business and its reputation and goodwill in ways that cannot be readily quantified. [Pouratian Decl. ¶24] Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc. 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ... goodwill, qualify as irreparable harm."); SMC Promotions, Inc. v. SMC Promotions 355 F.Supp.2d 1127, 1137 (C.D. Cal. 2005).

Moreover, in ¶ 5.a. of the Settlement Agreement, Defendants have previously expressly acknowledged and agreed that a breach of any of the terms of that agreement by the breaching party would cause immediate and irreparable injury to the non-breaching party, and that preliminary and permanent injunctive relief would be appropriate. [Pouratian Decl., Ex. 2] Therefore, based on the Defendants' own prior explicit recognition, it is reasonable for the Court to presume and find that because AIC is likely to succeed on the merits of its breach of contract claim, it faces immediate and irreparable injury for which preliminary injunctive relief would be appropriate.

In addition, the Ninth Circuit has held that in the context of trademark infringement, irreparable injury is ordinarily presumed from a showing of likelihood of success on the merits. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009); Vision Sports, Inc. v. Melville Corp, 888 F.2d 609, 612 n.3 (9th Cir. 1989); Finance Express, 564 F.Supp.2d at 1178 (C.D. Cal. 2008). In the present case, where Defendants have continued to use trademarks and trade names that are prohibited under the Settlement Agreement, irreparable

-9-

P's Memo of P&A Re Motion for Prelim. Inj.
American Impex v. International Ace Tex

injury and harm to Plaintiff may and should be presumed.

Irreparable injury to plaintiff may also be presumed when defendant "has engaged in a pattern of conduct that provides good cause for the Court to find that [defendant] will continue to infringe" on plaintiff's protected marks unless defendant is preliminarily enjoined. Finance Express LLC, 564 F.Supp.2d at 1178. Here, in light of Defendants' blatant breaches of important terms of the Settlement Agreement and their continued use of the prohibited trademarks and trade names even after August 17, 2009, it can be presumed that AIC will likely suffer irreparable harm in the absence of preliminary injunctive relief.

### D. **Plaintiff Has Raised Serious Questions on the Merits and the Balance of Hardships and Equities Is in Plaintiff's Favor**

In the present case, Plaintiff has shown that it has a fair chance of success on the merits of its claim for breach of settlement agreement, and therefore, it has raised serious questions on the merits of its claim. Duncan McIntosh Co. v. Newport Dunes Marina LLC, 324 F.Supp.2d 1078, 1083 (C.D. Cal. 2004), citing, Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984) ("A serious question [is] one as to which the moving party has a fair chance of success on the merits.").

In addition, the balance of hardships and equities is clearly in favor of AIC. As demonstrated above, Defendants have engaged in blatant and continuous material breaches of the Settlement Agreement in numerous aspects of their daily business operations, and they cannot make a reasonable and believable argument that their breaches were the result of an "honest mistake" during the period from June 17, 2009 to August 17, 2009. Moreover, Defendants have continued their settlement violations after August 17, 2009, as to which the "honest mistake" and "Notice and Cure" provisions of the Settlement Agreement do not even apply. Defendants have failed to honor their settlement obligations after having ample opportunity and over six months to do so, whereas AIC merely wants a preliminary

1  injunction to require the Defendants to abide by their settlement obligations.

### E. A Preliminary Injunction Is In the Public Interest

Where claims of trademark infringement and unfair competition are involved, public policy favors granting an injunction when there is a likelihood of consumer confusion. See, Anti-Monopoly, Inc. v. General Mills Fun Group 611 F.2d 296, 300-02 (9th Cir. 1979), cert. denied, 459 U.S. 1227 (1983); SMC Promotions, 355 F.Supp.2d at 1137. As discussed above, AIC has demonstrated a likelihood of success on the merits of its breach of contract claim that stems from Defendants' violation of key terms of the Settlement Agreement by continuing to adopt and use trademarks and trade names which they were prohibited to do. Accordingly, public policy considerations relating to avoiding public and consumer confusion weigh in favor of granting a preliminary injunction in favor of Plaintiff.

Moreover, there is a public interest in enforcement of settlement agreements and the encouragement of settling litigation. Kiddie Rides, Inc. v. Southland Engineering, Inc, 361 F.2d 575 (9th Cir. 1966). This factor also favors the granting of injunctive relief in favor of AIC in this case.

## IV. IF A BOND IS REQUIRED, THE AMOUNT SHOULD BE MINIMAL

Federal Rule of Civil Procedure 65(c) requires the posting of a bond by the party moving for preliminary injunctive relief for payment of costs and damages that Defendants may suffer if it is later found that they were wrongfully enjoined. "A bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success." Ticketmaster LLC v. RMG Technologies, Inc, 507 F.Supp.2d 1096, 1116 (C.D. Cal. 2007), citing, Jorgensen v. Cassidy, 320 F.3d 906, 919 (9th Cir. 2003).

In the instant case, Plaintiff submits that a bond should not be required, or if the Court deems it necessary, the amount of the bond should be minimal (e.g., $10,000) and no higher than $25,000 (i.e., no higher than the $25,000 liquidated damages provision set forth in the Settlement Agreement). This is because AIC has

LAW OFFICES OF KAMRAN FATTAHI
Sherman Oaks Galleria
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
Tel. (818) 205-0140 ; Fax (818) 205-0145

established that Defendants have clearly breached their settlement obligations and that AIC is likely to succeed on the merits of its claim for breach of settlement agreement. In addition, the preliminary injunction sought by AIC merely seeks to require the Defendants to do that which they were already obligated to do under the Settlement Agreement. Moreover, AIC is a relatively small business operation, and the imposition of a significant bond amount would cause undue hardship for AIC, and in the event that AIC could not afford to post a large bond, it would in effect allow Defendants to continue to violate the Settlement Agreement.

## V. CONCLUSION

In view of the foregoing, Plaintiff AIC requests that the Court grant its Motion for Preliminary Injunction to enjoin Defendants' from continuing their actions in breach of the Settlement Agreement.

Dated: October 19, 2009    /s/Kamran Fattahi
Kamran Fattahi
LAW OFFICES OF KAMRAN FATTAHI
Attorneys for Plaintiff,
American Impex Corp.

## PROOF OF SERVICE

As attorney of record for Plaintiff American Impex Corp. (d/b/a Ace Fabrics & Trims) in Civil Action No. CV09-7082 PA (Ex), I hereby certify that I caused the documents listed below to be served on the date indicated below on all parties to this action via the delivery method indicated and addressed to:

<u>Via E-mail (per stipulation by Larry F. Gitlin to accept service by e-mail)</u>

Larry F. Gitlin, Esq.
RAPKIN, GITLIN & BEAUMONT
21650 Oxnard St., Suite 1620
Woodland Hills, CA 91367-4620
E-mail: LGitlin@rgblawyers.com

<u>Document(s) Served</u>

- Plaintiff's Notice of Motion and Motion for Preliminary Injunction.
- Memorandum of Points and Authorities In Support of Plaintiff's Motion for Preliminary Injunction.
- [Proposed] Order Re Preliminary Injunction

Dated: October 19, 2009
/s/ Kamran Fattahi
Kamran Fattahi
LAW OFFICES OF KAMRAN FATTAHI
Attorneys for Plaintiff,
American Impex Corp.(d/b/a Ace Fabrics & Trims)